UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| COMMON CAUSE INDIANA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 1:17-cv-3936 |
| v. | ) | |
| | ) | |
| CONNIE LAWSON, in her official capacity as Secretary of State of Indiana, J. BRADLEY KING, in his official capacity as Co-Director of the Indiana Election Division, and ANGELA M. NUSSMEYER, in her official capacity as Co-Director of the Indiana Election Division, | ) ) ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

**Introduction**

1.      This action concerns a recently-amended Indiana statute, Indiana Code § 3-7-38.2-5(d)–(e), which violates the National Voter Registration Act of 1993 ("NVRA"), 52 U.S.C. § 20501 *et seq*.  This provision of Indiana law now permits or requires Indiana counties to ignore the mandatory procedures and protections in the NVRA, resulting in non-uniform, discriminatory, and illegal cancellations of Indiana voter registrations.

2.      In 1993, Congress passed the NVRA in part "to establish procedures that will increase the number of eligible citizens who register to vote in elections for Federal office" while "ensur[ing] that accurate and current voter registration rolls are maintained." *Id*. § 20501(b)(1), (4).  To meet these twin goals, the NVRA requires states to "conduct a general program that makes a ***reasonable*** effort to remove the names of ineligible voters from the official lists of eligible voters by reason of . . . a change in the residence of the registrant," *id*. at § 20507(a)(4)(B) (emphasis added), and that any such program is "uniform, nondiscriminatory,

and in compliance with the Voting Rights Act of 1965," *id.* § 20507(b)(1). The NVRA also mandates that states' list-maintenance programs and activities follow specific procedural requirements.

3.      One such requirement is that a state "shall not remove" a voter from its list of eligible voters due to change in residence unless: (a) the voter confirms such a residence change in writing; or (b) the voter fails to respond to a notice sent by the state as part of the aforementioned general program ***and*** the state waits two general election cycles during which the voter does not vote in the jurisdiction. *Id.* § 20507(a)(4), (d)(1).

4.      Indiana employs a number of different list-maintenance programs aimed at removing voters from the registration rolls whom it believes are ineligible because they have moved out of state. At issue here is Indiana's program that utilizes second-hand data from the Interstate Voter Registration Crosscheck Program ("Crosscheck"), a program administered by the Kansas Secretary of State that purports to compare voter registration data provided by at least 30 member states in an attempt to identify voters who have allegedly moved and registered to vote in another member state.

5.      Before July 1, 2017, the Indiana law governing removal of registrants from the voter rolls using Crosscheck data included the NVRA-mandated notice-and-waiting procedures. The law required counties to "send an address confirmation notice to the Indiana address of" any voter believed to have moved based on data from Crosscheck, unless that voter had authorized cancellation of her Indiana registration. Ind. Code § 3-7-38.2-5(d)–(e), *before July 1, 2017 amendment*. Once such voters were sent an address-confirmation notice, a separate provision of Indiana law required a two-general-elections waiting period before a county voter registration office may cancel the registration of any voter who did not return the notice indicating she had

*not* moved outside the relevant jurisdiction. *See id*. at § 3-7-38.2-2(f)-(g). In other words, pre-amendment, Indiana law prohibited counties from removing voters for purportedly moving out of state based on data from Crosscheck unless the voters failed to respond to a notice and failed to vote in the subsequent two consecutive general elections. Facially, at least, these procedures aligned with the NVRA's notice and waiting-period requirements.

6.      As interpreted by Defendants, Indiana Senate Enrolled Act 442 (SEA 442), which amended Indiana Code § 3-7-38.2-5(d)–(e), effective on July 1, 2017, removed the notice and waiting-period procedures. Indiana Code § 3-7-38.2-5(d)–(e) now permits Indiana counties to cancel voter registrations *immediately* once they receive information through Crosscheck that they "determine" indicates a voter may have moved. The counties are no longer required to send the requisite written confirmation or wait for two general elections in which the voter is inactive before removing the voter from the rolls.

7.      Compounding this problem is the proven unreliability of the second-hand Crosscheck information used in Indiana Code § 3-7-38.2-5(d)–(e) to identify voters who may have moved.

8.      Because of these defects, Indiana Code § 3-7-38.2-5(d)–(e) violates the NVRA's specific notice and waiting-period requirements and permits the removal of registrants from the voter rolls in a manner that is not reasonable, nondiscriminatory, or uniform. As a result, numerous Hoosiers are at risk of being disenfranchised unlawfully.

9.      Plaintiff Common Cause Indiana is a non-profit organization that, among other things, advocates for the elimination of barriers to voting and protecting the right to vote. It brings this action to remedy the violations of the NVRA resulting from the amended Indiana Code § 3-7-38.2-5(d)–(e). It seeks a declaratory judgment, temporary and permanent injunctive relief, and other related remedies.

**Parties**

10.     Common Cause Indiana is the Indiana affiliate of Common Cause, a national non-profit, nonpartisan grassroots organization that advocates in favor of ethics, good government, campaign finance reform, constitutional law, and the elimination of barriers to voting.  The organization has approximately 12,000 members who live and vote in Indiana.

11.     Defendant Connie Lawson is the Indiana Secretary of State and in that capacity is the chief election official in the state of Indiana, including in this Judicial District. Ind. Code § 3-6-3.7-1.  She is also charged with performing all ministerial duties related to the administration of elections by the state of Indiana.  *Id.* § 3-6-4.2-2(a).  Common Cause sues Defendant Lawson in her official capacity.

12.     Defendants J. Bradley King and Angela M. Nussmeyer are co-directors of the Indiana Election Division and in that capacity are the chief state election officials responsible for the coordination of Indiana's responsibilities under the NVRA, including in this Judicial District.  *Id.* § 3-7-11-1.  Defendants King and Nussmeyer thus are charged with coordinating county voter registration.  Common Cause sues Defendants King and Nussmeyer in their official capacities.

**Jurisdiction and Venue**

13.     This action is brought pursuant to the NVRA's private right of action, 52 U.S.C. § 20510(b), and 42 U.S.C. §§ 1983 and 1988.

14.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a).

15.     Declaratory relief is authorized by Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. §§ 2201 and 2202.

16.     This Court has personal jurisdiction over Defendants because they are each citizens of the State of Indiana.

17.     Venue in this district is proper pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claims occurred in this district and Defendants conduct business in this district.

**Factual Allegations**

**The NVRA's History and Requirements**

18.     The abysmal voter turnout in the 1988 general election—the lowest turnout in 40 years—invigorated legislative efforts to pass a national voter registration law.[1]  The resulting NVRA, passed in 1993, aimed to "complet[e] what had been started by the Voting Rights Act of 1965 and its amendments, eliminating the final barriers to voting: voter registration…"[2]

19.     While the NVRA requires states to "make[] a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters by reason of. . . a change in the residence of the registrant[,]" it also imposes strict requirements and limitations on how states carry out this requirement.  52 U.S.C. § 20507(a)(4).

20.     The NVRA provides—in plain, prohibitive language—that a State "shall not remove" a voter from its list of eligible voters due to change in residence unless: (a) the voter confirms such a residence change in writing; or (b) the voter fails to respond to a notice sent by the state as part of a general list-maintenance program ***and*** the voter does not vote in the jurisdiction in two federal election cycles.  *Id*. at § 20507(d)(1).  These restrictions reflect Congress' intent that "once a citizen is registered to vote, he or she should remain on the voting list so long as he or she remains eligible to vote in that jurisdiction."  S. Rep. No. 103-6, at 17 (1993).

---

[1] *See* Crocker, R. (2013). *The National Voter Registration Act of 1993: History, Implementation, and Effects* (CRS Rep. No. R40609). Retrieved from Congressional Research Service website: https://fas.org/sgp/crs/misc/R40609.pdf.
[2] *Id.*

21.     The NVRA also requires states to "conduct a general program that makes a ***reasonable*** effort to remove the names of ineligible voters from the official lists of eligible voters by reason of . . . a change in the residence of the registrant."  52 U.S.C. § 20507(a)(4)(B) (emphasis added).

22.     To be a "reasonable effort" under the NVRA, a list maintenance program based on change in residence must rely upon objective and reliable information of potential ineligibility due to a change of residence.  The NVRA provides an example of such reliability – the "change-of-address information supplied by the Postal Service," in which the voters themselves submit information that they have changed residence.  *Id.* at § 20507(c)(1)(A).

23.     The NVRA further mandates that such list-maintenance programs be "uniform, nondiscriminatory, and in compliance with the Voting Rights Act of 1965."  *Id.* at § 20507(b)(1).

**Indiana's Voter List Maintenance Law Before SEA 442**

24.     Indiana keeps "a single, uniform, official, centralized, and interactive statewide voter registration list" that is maintained by Defendants.  Ind. Code § 3-7-26.3-3.  The list is the single system for storing and managing the official list of voters in Indiana, and is the official voter registration list for all elections in Indiana.  *Id.* § 3-7-26.3-5.  Defendants work with county voter registration offices to input data into the voter registration list, and perform voter registration list maintenance.  *Id.* §§ 3-7-26.3-10, 11, 17.

25.     Indiana employs a number of different list-maintenance programs aimed at removing voters from the registration rolls whom it believes have become ineligible because they have moved out of state.  One of those programs relies on data received through the State's participation in Crosscheck, a program that purportedly seeks to identify voters who may be registered in more than one state.

26.     Indiana and approximately 30 other states currently participate in Crosscheck. These states all submit basic data on voters registered in their states to the Kansas Secretary of State, Kris Kobach, who administers the Crosscheck program. The Kansas Secretary of State's office compares the registration data across each of the participating states and returns to each state a list of voter records that share first name, last name, and date of birth with a voter record in another state.

27.     Under Indiana Code § 3-7-38.2-5(d)–(e), the NVRA official annually provides Indiana's statewide voter registration list to the Kansas Secretary of State, in order to compare it to registration data from all other states participating in Crosscheck. Ind. Code § 3-7-38.2-5(d). According to the express terms of the statute, within 30 days of a determination that an Indiana voter has an "identical . . . first name, last name and date of birth of the voter registered in [another] state[,] the NVRA official shall provide the appropriate county voter registration office with the name of and any other information obtained . .  concerning that voter." *Id.*

28.     While not provided for in the statute, Defendants have indicated that Indiana's Statewide Voter Registration System ("SVRS") utilizes data points beyond first name, last name, and date of birth to determine whether a voter who is identified by Crosscheck as a match should be forwarded on to the appropriate county voter registration office.

29.     Prior to SEA 442, Indiana Code § 3-7-38.2-5(d)–(e) required county voter registration offices to determine whether each individual: "(1) identified in the [Crosscheck] report provided by the NVRA official under this subsection is the same individual who is a registered voter of the county; (2) registered to vote in another state on a date following the date that voter registered in Indiana; and (3) authorized the cancellation of any previous registration by the voter when the voter registered in another state." *Id*. If a matched voter had ***not*** authorized

cancellation of a previous registration, then the prior Indiana law required the county voter

registration office to "send an address confirmation notice to the Indiana address of the voter."

*Id.* If, however, a matched voter had authorized cancellation, the county voter registration office

cancelled the voter's registration. *Id.*

**Indiana Law Now Violates the NVRA**

30.     SEA 442 amended Indiana Code § 3-7-38.2-5(d)–(e) by specifically eliminating the

language requiring counties to send a confirmation notice to Crosscheck-matched voters who had

not authorized cancellation. Pursuant to SEA 442, once a county receives Crosscheck

information from the NVRA official, a county "shall determine whether" the individual

identified in the Crosscheck report provided by the NVRA official is the individual registered in

the county and whether her registration in the other state post-dates her Indiana registration. Ind.

Code § 3-7-38.2-5(d). If the county makes this determination, the county "shall cancel the voter

registration of that voter." *Id.* § 3-7-38.2-5(e).

31.     While an earlier version of SEA 442 continued to require county voter registration offices

to mail notices to Crosscheck-matched voters, the final bill deleted this provision, allowing

county voter registration offices to remove a voter registration record based solely on

Crosscheck's assertion that there may be a duplicate record in another state.

32.     Indiana law, as interpreted and applied by Defendants, now violates the multiple

requirements set forth in Section 8 of the NVRA, because Indiana Code § 3-7-38.2-5(d)–(e) no

longer requires counties to send a confirmation notices or wait two general federal election

cycles before removing registrants based on a purported change in residence. Defendants have

taken the position that if a county determines a Crosscheck-matched voter has an out-of-state

registration post-dating her Indiana registration, that voter has actually "confirm[ed] in writing

that the [she] has changed residence." Defendants contend they then have no obligation,

consistent with 52 U.S.C. § 20507(d)(1)(A) and Indiana Code § 3-7-38.2-14(1), to send the

notice or wait for two general elections as required by the NVRA.

33.     Defendant Nussmeyer has acknowledged publicly that SEA 442 has eliminated the notice

and waiting period requirements previously mandated by Indiana Code § 3-7-38.2-5(d)–(e).  In a

presentation given at the Indiana Voter Registration Association Conference on May 17-18,

2017, Defendant Nussmeyer stated "After July 1, 2017, a change in Indiana law will permit

counties to cancel a voter record matched to Interstate record after careful review.  Before, state

law required counties to send the 'Interstate Mailer' if it wasn't clear if the other state's

registration form authorized cancellation in another jurisdiction."[3]

34.     Crosscheck does not collect or provide to member states, including Indiana, copies of the

out-of-state voter registration forms identified by Crosscheck as a potential match.  It also does

not provide the voter's previous address, if the voter provides it on their voter registration form.

35.     Defendant Lawson, in a June 13, 2017 letter sent to Common Cause by her office's

General Counsel, also confirmed Defendants' understanding that, following SEA 442's

enactment, Indiana now permits county voter registration offices to immediately cancel the

registrations of voters who are allegedly confirmed matches through Crosscheck—without

notice, and without waiting two federal election cycles.  *See* Exhibit 1 at 4.

36.     The June 13, 2017 letter states that the co-directors of the Election Division "set the rules

for evaluating proposed 'matches'" and that "[t]he Indiana General Assembly and Indiana's

NVRA officials have adopted the position that a voter registration application, signed and

affirmed under the penalty of perjury constitutes a registrant's authorization to cancel previous

---

[3] *See* Angie, Nussmeyer, *Voter List Maintenance*, IVRA Conference Presentation, Slide 21 (May 17-18, 2017), https://www.in.gov/sos/elections/files/Voter_List_Maintenance.2017.PPT.

registrations." *Id.* The letter further indicates that Defendants consider a Crosscheck match

sufficient proof that such authorization exists, and thus that "[i]t's not expected that a voter

registration office . . . must then contact the voter to seek permission to cancel the registration in

their jurisdiction, or wait two election cycles before acting." *Id.*

37.     Upon information and belief, county voter registration offices have and are removing

voters pursuant to Indiana Code § 3-7-38.2-5(d)–(e) since July 1, 2017.

38.     By imposing a list-maintenance program that allows removal of voters based solely on

information provided by Crosscheck—without confirmation of a change in residence from the

voter, without notice, and without any waiting period—Defendants' interpretation of Indiana

Code § 3-7-38.2-5(d)–(e) fails to comply with the strict notice-and-waiting requirements of

Section 8 of the NVRA.

39.     Indiana Code § 3-7-38.2-5(d)–(e) also violates the NVRA because it authorizes

immediate removal of voters based on a data source (Crosscheck) that does not provide *reliable*

information of potential ineligibility, and thus is not a "reasonable" list-maintenance program.

40.     Unlike a change-of-address form submitted by a voter herself to the Postal Service—

which the NVRA expressly requires states to confirm using the notice-and-waiting-period

procedure— the information that Crosscheck uses comes from a second-hand comparison of

basic voter data in two databases.

41.     Election experts have criticized Crosscheck for its unreliable methodology and

inaccuracy.

42.     Many voters share first names, last names, and dates of birth—the sole criteria on which

Crosscheck matches voter registration records.[4]  Crosscheck thus regularly produces a large

number of false positive registration matches.

43.     A recent statistical study concluded that 487 out of 884 "double voters" in New Jersey

matched using solely first name, last name, and date of birth as the matching criteria were most

likely different individuals.[5]  Another study by researchers at Stanford, Harvard, University of

Pennsylvania, and Microsoft found that Crosscheck's standard procedure would eliminate the

registrations of about 200 unique, legitimate voters for every one registration that could be used

to cast a double vote.[6]

44.     Even the Crosscheck Participation Guide admits that "a significant number of apparent

double votes are false positives and not double votes."[7]  Several states already have ceased using

Crosscheck, with at least one publicly attributing the move to Crosscheck's unreliability.[8]

45.     Defendants have indicated that SVRS does not rely solely on the three data points used in

the Crosscheck comparison in determining whether an Indiana voter may have a duplicate record

in another Crosscheck member state.  But Indiana Code § 3-7-38.2-5(d) expressly states that the

---

[4] The Birthday Paradox is a well-known quirk of probability theory. In a random group of 23 people, there is a 50 percent chance that two people have the same birthday; with 70 people, there's a 99.9 percent chance that two share a birthday. *See Bring Science Home, Probability and the Birthday Paradox*, Scientific American (March 29, 2012), https://www.scientificamerican.com/article/bring-science-home-probability-birthday-paradox/.

[5] Michael P. McDonald & Justin Levitt, *Seeing Double Voting: An Extension of the Birthday Problem* 120 7 Election L.J. 111 (2008), https://papers.ssrn.com/sol3/papers.cfm?abstract_id=997888. While New Jersey does not participate in Crosscheck, all the "double voters" were found by matching first name, last name, and birthdate in a process similar to that of Crosscheck.

[6] Sharad Goel *et al., One Person, One Vote: Estimating the Prevalence of Double Voting in U.S. Presidential Elections* (Harv. U., Working Paper, Jan. 13, 2017), http://scholar.harvard.edu/morse/publications/one-person-one-vote-estimating-prevalence-double-voting-us-presidential-elections.

[7] 2014 Participation Guide 5, Interstate Voter Registration Data Crosscheck (Dec. 201), https://wei.sos.wa.gov/agency/osos/en/press_and_research/weekly/Documents/Participation%20Guide%20with%20Comments.pdf

[8] Greg Palast, *The GOP's Stealth War Against Voters*, Rolling Stone (Aug. 24, 2016), http://www.rollingstone.com/politics/features/the-gops-stealth-war-against-voters-w435890; Jon Greenberg and Amy Sherman, *Florida No Longer Part of Controversial National Voter Data Project*, Miami Herald (Apr. 11, 2014), http://miamiherald.typepad.com/nakedpolitics/2014/04/florida-no-longer-part-of-controversial-national-voter-data-project.html.

NVRA official is to forward to the appropriate county voter registration office the name of (and any other information obtained concerning) any Indiana voter who has an "identical . . . first name, last name and date of birth of the voter registered in [another Crosscheck member] state." *Id.*

46. Further, Indiana Code § 3-7-38.2-5(d), as interpreted and applied by Defendants, violates the NVRA by adopting a policy and practice for voter registration removal that discriminatorily disenfranchises legally registered voters in violation of Section 8 of the NVRA's nondiscrimination requirement.

47. Among some minority populations, first-name naming conventions are more common and many individuals born around the same historical periods are given the same name. Many often share the same or similar last names. A match methodology using only first name, last name and date of birth is thus more likely to produce matches among such minority populations.[9] Indeed, existing studies show that incorrect matches using such a methodology are disproportionately concentrated among minority voters. Crosscheck flagged one in six Latinos, one in seven Asian-Americans, and one in nine African-Americans as potential double registrants.[10]

48. Using Crosscheck to directly purge voters from the rolls will discriminatorily impact certain racial minority registrants by subjecting them to burdensome re-registration requirements (without informing them of the need to do so).

---

[9] *See* Myrna Perez, Brennan Center for Justice, *Voter Purges 23* (2008). http://www.brennancenter.org/sites/default/files/legacy/publications/Voter.Purges.f.pdf.
[10] *See* Palast, *The GOP's Stealth War Against Voters*, Rolling Stone.

49.    Defendants are also violating the NVRA by allowing Indiana's 92 counties to carry out

voter list maintenance according to their own methodologies, contravening the uniformity

requirement of the NVRA's Section 8.

50.    Indiana Code § 3-7-38.2-5(d) instructs county voter registration offices to "determine"

whether individuals listed on the Crosscheck report provided by the NVRA official are the same

individuals registered to vote in their county.  Defendants do not provide counties with a

standardized procedure for this or require protections to ensure that such determinations are

carried out in a nondiscriminatory manner.

51.    On information and belief, some counties check to see whether the automatic "match" by

Crosscheck software also appears to the human eye to be a match (*i.e.*, confirming the names and

birth dates are the same), while others may perform no additional steps.

**Common Cause Notifies Defendants that SEA 442 Violates the NVRA**

52.    On June 9, 2017, Common Cause, through its counsel, sent a letter by certified mail to

Defendant Lawson, notifying her that the State of Indiana was failing to meet its obligations

under Section 8 of the NVRA for the reasons stated above.

53.    On July 13, 2017, Common Cause's counsel sent an identical letter by certified mail to

Defendants King and Nussmeyer.  These letters provided Defendants with notice of Common

Cause's intent to sue for the violations of Section 8 of the NVRA described therein, unless

Indiana corrected the violations within the 90-day notice period prescribed by the NVRA.

54.    Defendant Lawson, through her office's General Counsel, sent the above-referenced July

13, 2017 letter to Common Cause, cc'ing the other Defendants, in response.  Defendants

confirmed their understanding that Indiana Code § 3-7-38.2-5(d)–(e) no longer requires counties

to send a confirmation notice or wait two general federal election cycles before removing

registrants based on information from Crosscheck purportedly indicating that the voters may have moved. The letter stated the Secretary's belief that this procedure does not violate the NVRA, and it did not indicate that any steps would be taken to address Common Cause's concerns. *Id.*

55.     Upon information and belief, Defendants continue to follow the procedure for cancelling registrations of matched voters pursuant to their interpretation of Indiana Code § 3-7-38.2-5(d)– (e), and have not taken the steps necessary to remedy the State's noncompliance with Section 8 of the NVRA.

56.     Common Cause Indiana has long worked to expand and protect equal access to voting. It has done so on multiple fronts, including lobbying for non-partisan redistricting and increasing the number of satellite voting locations, as well as partnering with other community organizations to provide education and training to on-the-ground voting rights activists around the state.

57.     Common Cause Indiana has one employee and a limited budget, and relies on volunteers for much of its activities. It has to make hard choices about how to use its limited resources.

58.     When the legislature was considering SEA 442, Common Cause Indiana had to expend time and expense educating state officials and legislators about the NVRA and its requirements. Common Cause Indiana testified before a committee and spoke with Defendant Lawson's General Counsel, explaining in both cases the reasons set forth above why SEA 442 would make Indiana law violate the NVRA.

59.     Since July 1, 2017, Common Cause Indiana has had to devote additional time and resources to ameliorating the its effects of SEA 442, including activities aimed at educating

voters and community activists about the increased risk of having registration records erroneously removed from the voter rolls.

60.     In the past, Common Cause Indiana volunteers have had to assist voters who had their registration records erroneously removed by government officials.  Based on its experience, Common Cause Indiana believes that the number of such voters will increase as a result of SEA 442, and, therefore, additional resources will need to be diverted to assisting voters who will have their registration records erroneously removed.

**Legal Claims**

61.     As a consequence of Defendants' application of Indiana Code § 3-7-38.2-5(d)–(e), as amended by SEA 442, Defendants have violated and continue to violate Section 8 of the NVRA by:

    a.     permitting removal of voter records without the voters' explicit written authorization, or without sending a confirmation notice to the registrant and waiting the requisite two election cycles;

    b.     permitting the removal of voter records based on unreliable second-hand information received from Crosscheck that Indiana voters have moved out of state;

    c.     permitting Indiana counties to operate list-maintenance programs that are discriminatory; and

    d.     permitting Indiana counties to operate list-maintenance programs that are not uniform.

62.     Defendants' conduct in violation of Section 8 of the NVRA has injured and will continue to injure Common Cause Indiana because Defendants' conduct has caused and will cause Common Cause Indiana to invest resources in lobbying, advocacy, education, and voter

15

protection efforts in response to the new and illegal statute, diverting those resources from other activities important to its missions.

63.    Defendants' past and continuing violations of the NVRA through their interpretation and implementation of Indiana Code § 3-7-38.2-5(d)–(e) has aggrieved and continues to aggrieve Common Cause, which has no adequate remedy at law.  Declaratory and injunctive relief is required to remedy past and continuing violations of the NVRA and to ensure Defendants' future compliance with the NVRA.

**Request for Relief**

WHEREFORE, Common Cause respectfully requests that this Court:

a.      Accept jurisdiction of this cause and set it for hearing;

b.      Declare that Indiana Code § 3-7-38.2-5(d)–(e) and/or Defendants' interpretation of Indiana Code § 3-7-38.2-5(d)–(e) violates Section 8 of the NVRA, 52 U.S.C. § 20507, for the reasons described above;

c.      Issue a preliminary injunction, later to be made permanent:

1.      prohibiting the cancellation of Indiana voter registration records pursuant to the procedure for cancelling voter registrations of Crosscheck-matched voters set out in Indiana Code § 3-7-38.2-5(d)–(e);

2.      prohibiting the cancellation of Indiana voter registration records based on second-hand information provided by the Crosscheck program;

3.      ordering Defendants to promulgate uniform and NVRA-compliant procedures for Indiana county voter registration offices to follow; and

4.      directing Defendants to restore to Indiana's voter-registration list all voters who were removed after July 1, 2017 pursuant to the procedure for cancelling

16

voter registrations of Crosscheck-matched voters set out in Indiana Code § 3-7-38.2-5(d)–(e).

d.      Awarding Common Cause its reasonable attorneys' fees, litigation expenses, and costs incurred in connection with this action, pursuant to 52 U.S.C. § 20510(c) and 42 U.S.C. § 1988;

e.      Retaining jurisdiction over this action to ensure that Defendants comply with any order(s) issued by this Court and with their obligations under the NVRA; and

f.      Granting such additional relief as to this Court seems just and proper.


Dated:  October 27, 2017

s/ Jan P. Mensz
Jan P. Mensz
No. 33798-49
s/ Gavin M. Rose
Gavin M. Rose
No. 26565-53
ACLU of Indiana
1031 E. Washington St
Indianapolis, IN 46202
317/635-4059
fax:  317/635-4105
jmensz@aclu-in.org
grose@aclu-in.org


Sophia Lin Lakin
Dale Ho
Motions to Appear *Pro Hac Vice* to be Filed
American Civil Liberties Union
125 Broad Street, 18th Floor
New York, NY 10004
212/519-7836
slakin@aclu.org
dho@aclu.org

Stuart C. Naifeh
Motion to Appear *Pro Hac Vice* to be Filed
Demos
80 Broad St, 4th Floor
New York, NY 10004
212/485-6055
snaifeh@demos.org


Matthew Jedreski
Christiane Roussell
Motions to Appear *Pro Hac Vice* to be Filed
Davis Wright Tremaine LLP
1200 Third Ave, 22nd Floor
Seattle, WA 98101
206/622-3150
mjedreski@dwt.com
christianeroussell@dwt.com