UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| COMMON CAUSE INDIANA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:17-cv-03936-TWP-MPB |
| | ) |
| CONNIE LAWSON in her official capacity as Secretary of State of Indiana, J. BRADLEY KING in his official capacity as Co-Director of the Indiana Election Division, ANGELA NUSSMEYER in her official capacity as Co-Director of the Indiana Election Division, | ) ) ) ) ) ) ) |
| | ) |
| Defendants. | ) |

**ORDER ON INTERESTED PARTY'S MOTION TO INTERVENE**

This matter comes before the Court on Interested Party's, Public Interest Legal Foundation ("the Foundation"), *Motion to Intervene*, filed on November 9, 2017. (Docket No. 11). The Foundation seeks leave to intervene as a defendant in this action. The motion is fully briefed with a response brief from Plaintiff, Common Cause Indiana ("Common Cause"), and a reply brief from The Foundation. (Docket No. 35; Docket No. 39). Supplemental briefing was later provided with leave from the Court. (Docket No. 40; Docket No. 43; Docket No. 46). For the following reasons the Court **DENIES** the Foundation's motion.

On October 27, 2017, Common Cause filed its complaint alleging that a newly-enacted Indiana voter registration law violates the National Voter Registration Act of 1993 ("NVRA"). The current Defendants are the Indiana state officials charged with ensuring Indiana's compliance with the NVRA. The Foundation is an Indiana nonprofit organization with a special interest in the administration of election laws. It provides that its charitable mission includes

promoting election integrity, ensuring that voter roll list maintenance laws and election administration procedures are followed, and providing assistance to states that seek to enforce their constitutional mandate to determine the rules and laws pertaining to their own state elections. ([Docket No. 12 at ECF p. 2](Docket No. 12 at ECF p. 2)). Specifically, the Foundation seeks to ensure that the nation's voter rolls are accurate and current, working with election administrators nationwide and educating the public about the same.

The Foundation argues intervention is permissible because it has a direct and tangible interest in the litigation that will necessarily be impaired if the Plaintiff prevails and that interest is not adequately represented by any Defendant. At minimum, the Foundation argues it should be granted permissive intervention as Common Cause has been permitted to in prior litigation—although that litigation was not within the Seventh Circuit. Common Cause, opposes the Foundation's intervention, arguing the Foundation lacks standing.[1] Even if this Court finds standing exists, Common Cause argues that the Foundation does not meet the requirements for intervention as of right because it lacks a direct and substantial interest relating to the subject matter of this litigation, its purported interests will not be impaired without its involvement, and existing Defendants adequately represent any interest the Foundation has in the case. Moreover, Common Cause argues that this Court should deny the Foundation's request for permissive intervention because the Foundation's proposed defense of this action is identical to Defendants' and it will be an unnecessary waste of judicial resources by increasing the amount of discovery and court filings. The Foundation argues it has standing because: Congress granted the Foundation a private, legal right to pursue its interests within 52 U.S.C. § 20510(b) and, if

---

[1] Plaintiff argues the Foundation lacks both individual and representational standing to intervene. The Court notes that the Foundation does not rely on representational standing or submit evidence of the same in its briefing—thus, the Court will only address whether the Foundation has individual standing.

Plaintiff prevails, the Foundation would be foreclosed from pursuing litigation against Indiana election officials seeking to use a list maintenance tool that should be utilized in connection with the list-maintenance program required by the NVRA.

## I. STANDING

In the Seventh Circuit, an intervenor—whether as of right or by permission and as a plaintiff or defendant—must demonstrate Article III standing. *City of Chicago v. Fed. Emergency Mgmt.* Agency, 660 F.3d 980, 984 (7th Cir. 2011); *Flying J, Inc. v. Van Hollen*, 578 F.3d 569, 571, 573 (7th Cir. 2011) (discussing, specifically, that standing is required for both intervention types); *Dillard v. Chilton Cty. Comm'n*, 495 F.3d 1324, 1337 n.10 (11th Cir. 2007). In *Flying J*, the Seventh Circuit, in discussing the requirements to intervene pursuant to Rule 24(a)(2), noted that "[n]o one can maintain an action in a federal court, including an appeal, unless he has standing to sue, in the sense required by Article III of the Constitution. . . . But the interest required by Article III is not enough by itself to allow a person to intervene in a federal suit and thus become a party to it." 578 F.3d at 571. With regards to intervention via Rule 24(b)(1)(B), the Seventh Circuit also held, "[l]ike anyone who wants to maintain an action in federal court, the association has to have standing in the Article III sense[.]" *Id.* at 573.

*Bond v. Utreras*, 585 F.3d 1061 (7th Cir. 2009), was decided a few months after *Flying J* and recognized that *Flying J* had stated "without discussion that a permissive intervenor must establish Article III standing." However, the *Bond* court found it "an 'open question in this circuit . . . whether Article III standing is required for permissive intervention under Rule 24(b).'" *Id.* at 1069-70 (selected citations omitted) (omission in original). The Seventh Circuit then proceeded to hold that "when a third party seeks intervention under Rule 24(b) for the purpose of challenging a protective order in a case or controversy that is no longer live . . . the

intervenor must meet the standing requirements of Article III in addition to Rule 24(b)'s requirements for permissive intervention." *Id.* at 1072. However, not only did *Bond* not explicitly overrule *Flying J*'s general standing holding, but it could not have done so. *See* 7th Cir. R. 40(e) ("A proposed opinion approved by a panel of this court adopting a position which would overrule a prior decision of this court or create a conflict between or among circuits shall not be published unless it is first circulated among the active members of this court and a majority of them do not vote to rehear en banc the issue of whether the position should be adopted."). Further support that *Bond* did not overrule *Flying J* can be found in the later-decided *City of Chicago*, where the Seventh Circuit, citing *Flying J* and not *Bond* noted that the Seventh Circuit has held that Article III standing is required even if "the existing parties remain in the case." *City of Chicago*, 660 F.3d at 984.

The Court has also considered the additional cases on the standing issue cited by the Foundation, which were submitted with the Court's leave. In *Solid Waste Agency of Northern Cook Cty. v. U.S. Army Corps of Engineers, et al.*, 101 F.3d 503 (7th Cir. 1996) ("*Solid Waste Agency*"), the Foundation cites to a discussion where the Court discusses the "interest" in Rule 24(a)(2) could be more, less, or the same as the interest required to confer standing since by assumption there are parties with standing already in our cases. *Id.* at 506. The opinion cites to no case law for this dicta. However, the Foundation fails to acknowledge the explicit statement provided later in *Solid Waste Agency* where the Court stated, "The [property right loss] would give him the minimal standing required by Article III, *which our court requires of any intervenor*." *Id.* at 507 (emphasis added) (citing *United States v. 36.96 Acres of Land, More or Less, Situated in LaPorte Cty., State of Ind.*, 754 F.2d 855 (7th Cir. 1985)). The Foundation also cites *Habitat Educ. Center, Inc. v. Bosworth*, 221 F.R.D. 488 (E.D. Wis. May 24, 2004), which

4

provides "The Seventh Circuit has discussed the interest requirement of Rule 24(a)(2) in connection with the standing requirement of Article III of the Constitution and indicated that a would be intervenor must have constitutional standing." *Id.* at 492. While it also acknowledged that the Seventh Circuit's treatment of the issue, up until that point, had been inconsistent, the court concluded "it is possible to resolve the present motion without determining [the standing issue]." *Id.* at 494. That court denied intervention both by right and permissively. *Id.* It is notable the *Habitat Educ. Center, Inc.* decision was issued well prior to the *Flying J Inc.*, decision. This Court concludes that the Seventh Circuit requires standing for *all* intervenors.

> The Seventh Circuit has articulated the standing requirement as follows:
>
> > Standing is 'an essential and unchanging part of the case-or-controversy requirement of Article III.' *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S. Ct. 2130, 119 L.Ed.2d 351 (1992). . . . [T]he elements [that] must [be] show[n] are: (i) an injury in fact, which is an invasion of a legally protected interest that is concrete and particularized and, thus, actual or imminent, not conjectural or hypothetical; (ii) a causal relation between the injury and the challenged conduct, such that the injury can be fairly traced to the challenged action of the defendant; and (iii) a likelihood that the injury will be redressed by a favorable decision.

*DH2, Inc. v. U.S. S.E.C.*, 422 F.3d 591, 596 (7th Cir. 2005) (citing *Lee v. City of Chicago*, 330 F.3d 456, 468 (7th Cir. 2003) (citing *Lujan*, 504 U.S. at 560-61, 112 S. Ct. at 2130)). A party's "mere 'interest in a problem,' no matter how longstanding the interest and no matter how qualified the organization is in evaluating the problem, is not sufficient by itself" to establish standing. *Sierra Club v. Morton*, 405 U.S. 727, 739 (1972).

The Foundation lacks an injury in fact. It proposes, as a basis for standing: that 52 U.S.C. § 20510(b) confers it with a legal right to pursue litigation against states and state officials when they violate the NVRA and that, if Common Cause prevails in this case, the Foundation would be foreclosed from pursuing litigation against Indiana election officials seeking the use of a list

5

maintenance tool that should be utilized in connection with the list-maintenance program required by the NVRA. This is not sufficient to establish an injury in fact. 52 U.S.C. § 20510(b) permits a person who is aggrieved by a violation of the NVRA to bring a civil action after certain procedural requirements have been met. In no way does it, by itself, confer standing for an organization to intervene as a defendant in this action where Common Cause has alleged a state's statute violates the NVRA. "Otherwise there would be universal standing:" any individual could intervene in an action alleging a violation of the NVRA under § 20510(b). *Books v. Elkhart County, Ind.*, 401 F.3d 857, 870 (7th Cir. 2005).

The Foundation's mission to ensure that states and counties properly maintain voter-registration lists as required under federal law and its actions, including list-maintenance activities of states and counties, including in Indiana, differentiates the Foundation from voters generally. But neither Common Cause nor the State of Indiana proposes to interfere in any way with the Foundation's monitoring activities. While the outcome of this litigation may impact the methods by which the Foundation monitors voter lists or the requirements it must consider as it monitors lists, there is no indication the Foundation's mission will be entirely foreclosed. The Foundation's interest in the maintenance of accurate voting lists—to the extent those interests are implicated by this litigation at all—will be adequately represented by Indiana.

The Foundation's general citations to other cases where nonprofit entities have been permitted to intervene are inapplicable. Each case cited by Plaintiff occurred outside the Seventh Circuit, permitted the nonprofit organization to intervene permissively, and did not address standing. *Town of Chester, N.Y. v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1651 (2017) (recognizing circuit split on whether standing is required to be an intervenor of right); *see also Flying J, Inc.*, 578 F.3d at 573 (noting, in the Seventh Circuit, standing is also required for permissive

intervention). Given the other circuits' opinions' silence as to standing when granting permissive intervention, these associations' experiences are inapplicable to our standing analysis here.

The Foundation's purpose is to protect the integrity of each citizen's right to vote from impingement by inadequate election administration. As the Supreme Court has repeatedly held, "such a 'generalized grievance'—no matter how sincere—is insufficient to confer standing." [Hollingsworth v. Perry, 133 S. Ct. 2652, 2656 (2013)](); *see also* [Diamond v. Charles, 476 U.S. 54, 66-68, 106 S. Ct. 1697, 1705-1707 (1986)]() (holding pediatrician seeking to intervene in case challenging Illinois Abortion Law lacked standing, despite the fact that he alleged the enforcement of the law would provide him more patients because those allegations were too speculative and his general interest as a physician was nothing "more than a desire to vindicate value interests," which was insufficient to confer Article III standing).

The Foundation has failed to allege a concrete and particularized injury to itself as an organization in order to confer standing—a requirement for intervention either as of right or permissive.

## II. INTERVENTION AS OF RIGHT

Even assuming standing, the Foundation fails to otherwise meet Rule 24(a)(2)'s requirements. For intervention by right, (1) the application must be timely; (2) the applicant must have a direct and substantial interest in the subject matter of the litigation, (3) the applicant's interest must be impaired by disposition of the action without the applicant's involvement; and (4) the applicant's interest must not be represented adequately by one of the existing parties to the action." [Keith v. Daley, 764 F.2d 1265, 1268 (7th Cir. 1985)](); *see* [Fed. R. Civ. P. 24(a)(2)]().

The interest required by Article III is not enough by itself to allow a person to intervene in a federal suit and thus become a party to it. Rule 24(a)(2) requires that the applicant claim "an

interest relating to the property or transaction that is the subject of the action." While "interest" is not defined, the case law is clear that more than the minimum Article III interest is required. The necessary interest is "something more than a mere 'betting' interest, but less than a property right." *[Sec. Ins. Co. of Hartford v. Schipporeit, Inc.](), 69 F.3d 1377, 1380-81 (7th Cir. 1995)* (internal citations omitted).

While the Foundation's motion to intervene was timely, the Foundation has failed to establish the remaining four requirements. It lacks a direct and substantial interest relating to the subject matter of this litigation. Its purported interests will not be impaired without its involvement. Lastly, the present Defendants adequately represent any interest the Foundation contends it has in the case.

The Foundation argues that it has a strong interest in the voter roll list maintenance procedures challenged by Common Cause because the Foundation has an interest in ensuring that the constitutional balance vesting state control over elections is preserved and that the democratic right to participate effectively and in state-prescribed elections is ensured for all citizens in Indiana. ([Docket No. 12 at ECF p. 5]()). The Foundation argues it has numerous unique interests; in state control over structuring its own election system; in restrictions on Indiana's ability to conduct fair and robust elections by limiting the state's programs for ensuring that its list of eligible voters is kept accurate, and in limits beyond what was contemplated by Congress. *Id.*

However, the Foundation's stated interests are too generalized to afford a right to intervention under Rule 24(a), as they are the same for the proposed intervenor as for every registered voter in Indiana. Because the Foundation's interests in the subject matter of the litigation are insufficient to justify intervention, the Court need not address the question of

8

whether the disposition of the case might impair or impede the Foundation's ability to protect such interests. Moreover, even assuming that the Foundation's interests were sufficient to justify intervention and that such interests might be impaired by the litigation, the Court would still deny the Foundation's motion because representation of their interests by existing parties is adequate.

In determining whether representation is adequate, the court must first ascertain whether the interests of the existing party and the applicant intervenor are identical, similar or adverse, or whether the applicant intervenor's interest is not represented at all. *Habitat Educ. Center, Inc., 221 F.R.D. at 495*. If applicant intervenor's interest is not represented at all or if it is adverse to that of the existing party, representation is inadequate. If the interest of the original party and that of the applicant are identical, adequacy of representation is presumed. *Solid Waste Agency, 101 F.3d at 508*. If the interest of the applicant and of the existing party are similar, but not identical, the court must consider the case's circumstances and make a determination. *Habitat Educ. Center, Inc., 221 F.R.D. at 495*.

The Foundation argues Defendants are not likely to press all defenses available in the case nor are they likely to press against the factual assertions in the Complaint as fully as the Foundation, given it is unrestrained by political concerns. (Docket No. 12 at ECF p. 7). The Foundation points to the Defendants' Answer in a related case pending before this Court to show that the Foundation's arguments are different in that they explain how Plaintiff's provide an incorrect interpretation of the list-maintenance provisions of the NVRA, within the context of other litigation exploring the question. *Id*. The Foundation also argues that the State is unlikely to fully reveal the extent of prior failures to conduct list maintenance and the reasonableness of

9

legislative changes to correct that failure. *Id.* at ECF p. 18. The Foundation provides no evidence for its conclusions that the State will not zealously defend this lawsuit.

The differences between the State's interest and those of the Foundation are so small that the Foundation's interests do not require separate representation. The State and the Foundation share the same narrow objective: to uphold I.C. § 3-7-38.2-5(d)-(e). In addition, the broader goals of the State and the Foundation, as they apply to this lawsuit, are similar if not identical. The current Defendants have actively pursued voter list maintenance—as is evidenced by the enactment of the very statute being questioned and by October 2017 statements made by Defendant Lawson before Congress. ([Docket No. 35-3](#)). In that statement, Defendant Lawson indicated that voter list maintenance reduces election costs, boosts voter confidence in the election system, and also addressed Indiana's participation in the Interstate Crosscheck program—public statements evidencing that these Defendants are able and apt to defend this lawsuit based on these broader themes. The Foundation argues its goals are broader than the Defendants' because its goal is to advance its mission (ensuring properly maintained voter registration lists), but there is no evidence this is not similar, if not identical, to the Defendants' goals. Further, the central objective of the lawsuit is to determine whether Senate Enrolled Act 442 complies with the requirements of the NVRA and, in that respect, the litigation does not call into question the Foundation's entire mission.

In *Solid Waste Agency*, the court acknowledged that the state likely had "additional interests" not shared by the prospective intervenors, but held that "diversity of . . . interests" was not enough to establish that the prospective intervenors were not adequately represented. [101 F.3d at 508](#). Thus, the Foundation's arguments in which it assumes, without evidence, that Defendants may have underlying objectives and that the Foundation's goals are broader than the

Defendants, is insufficient to establish that the Defendants do not adequately represent the Foundation's interest. It is also irrelevant that the Foundation has, in its view, an "enlightened" understanding of election law "gained from litigation elsewhere involving the same statute." ([Docket No. 13 at ECF p. 8](#)). In *Keith v. Daley*, the Seventh Circuit rejected this argument holding that the subjective assessment of the conviction of the defendants and the intervenors is not the test for determining adequacy of representation. *[Keith](#)*[, 764 F.2d at 1270](#). For the above reasons, the Court concludes that, even if the Foundation had an interest within Rule 24(a)(2), such interest is adequately represented by the Defendants. Thus, for this reason also, the Foundation's motion to intervene as of right would be denied.

### III. PERMISSIVE INTERVENTION

The Foundation also seeks permissive intervention. Permissive intervention is controlled by [Fed. R. Civ. P. 24(b)](#), which provides in relevant part.

> Upon timely application anyone may be permitted to intervene in an action: . . . (2) when an applicant's claim or defense and the main action have a question of law or fact in common. . . . In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

Permissive intervention is wholly discretionary. *[Keith](#)*[, 764 F.2d at 1272](#). Here, the Foundation's proposed defense of the action is similar, if not identical, to Defendants'. The Foundation stated in its Proposed Answer that it intends to argue: (1) an Indiana voter's purported registration in another state amounts to that voter's confirmation "in writing that the registrant has changed residence" outside of Indiana; and (2) that the NVRA does not require Indiana to use a notice-and-mailing procedure for removing registrants under SEA 442. ([Docket No. 11-1](#)).

Even if standing were not a requirement for permissive intervention, the Court is doubtful whether the Foundation even has a claim or defense in common with the main action. Although the Foundation agrees with the Defendants' positions, it would not be accurate to say that they, therefore, had a defense in common with the Defendants because Common Cause makes no claim against the Foundation and because the NVRA on which Common Cause's claims are based do not apply to the Foundation. The NVRA simply cannot be used to enforce a claim against the Foundation. This is evidence by looking at the Foundation's proposed answer, in which it argues *Indiana*'s actions or, in other cases inactions, are lawful.

Finally, even if it could be said that the applicants had a claim or defense in common with the main action, this Court would exercise its discretion to decline to permit the Foundation to intervene. The Foundation's connection to the case is relatively attenuated, in that the Foundation does not vote, does not participate in voter registration drives, and does not claim any real, tangible and particularized effect on itself or its programs and activities from SEA 442 or a challenge to it. When intervention of right is denied because the state is likely to provide adequate representation, the case for permissive intervention is largely eroded. *Menominee Indiana Tribe of Wis. V. Thompson*, 164 F.R.D. 672, 678 (W.D. Wis. 1996). The Court concludes that for all these reasons and to avoid any possible undue delay or prejudice to the existing parties, the Foundation's alternative motion for permissive intervention will be denied.

## IV. CONCLUSION

For the reasons stated, the Foundation's Motion to Intervene (Docket No. 11) is **DENIED**. The Foundation may, however, participate in the case as amici curiae if it so wishes, and file amicus curiae briefs.

**SO ORDERED.**
Date: 2/27/2018

Matthew P. Brookman
United States Magistrate Judge
Southern District of Indiana

Service made electronically to all ECF-registered counsel of record.